UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
JAMES MEMMINGER,

                                :

                Petitioner,      :       REPORT & RECOMMENDATION

                                :

        -against-                :       05 Civ. 471 (WHP)(MHD)

                                :

THE PEOPLE OF THE STATE OF NEW
YORK and JAMES T. CONWAY,        :
Acting Superintendent, Attica
New York,                        :

                Respondents.     :
--------------------------------x

TO THE HONORABLE WILLIAM H. PAULEY, U.S.D.J.:


        Pro se petitioner James Memminger seeks a writ of habeas
corpus to challenge his 2001 conviction in New York State Supreme
Court, Bronx County, on a single count of murder in the second
degree. The court sentenced Memminger to an indeterminate prison
term of twenty-five years to life. He is currently serving that
sentence.


        Memminger asserts three grounds in support of his application.
First, he contends that the trial court denied him a fair trial by
erroneously instructing the jurors on the meaning of reasonable
doubt and by effectively shifting the burden of proof from the
State. Second, he asserts that the judge improperly relinquished
his judicial authority by delegating a court officer to ask a juror

1

whether the juror had seen the petitioner in restraints. Third, he argues that the prosecutor violated his constitutional rights by not disclosing photographs of the sole eyewitness until after she was called to the stand and cross-examined.

Respondents of course oppose the petition. They argue that the first claim is procedurally barred in part and entirely meritless, that the second claim is groundless and that the third claim is also baseless.

For the reasons that follow, we recommend that the writ be denied and the petition dismissed.

Prior Proceedings

Memminger's conviction stemmed from the stabbing death of a man named Charles Trail, who was the boyfriend of Memminger's former girlfriend Theresa Jack. The murder took place on April 3, 1998 in Ms. Jack's apartment in the Bronx. Six days later two City workers discovered the body of Trail, dumped on a street and covered with garbage. On April 12, 1998, the police arrested Memminger, who made a statement admitting that he had killed Trail but claiming that he had acted in self-defense.

A Bronx County grand jury returned a multi-count indictment against Memminger on May 6, 1998. It charged him with one count of first-degree murder, three counts of second-degree murder, a single count of first-degree manslaughter, two counts of first-degree kidnapping, one count of fourth-degree criminal possession of a weapon, two counts each of first-degree robbery and first-degree burglary, one count of fifth-degree criminal possession of stolen property, four counts of first-degree criminal contempt, one count of endangering the welfare of a child, two counts of second-degree criminal contempt and one count of second-degree burglary. (Affidavit of Ass't Dist. Att'y Susan E. Baumgartner, sworn to May 17, 2005, Ex. 2 at 3).

Petitioner moved before trial to suppress his statement to the police. The court (Hon. Lawrence Tonetti, S.C.J.) denied the motion. (Id. Ex. 2 at 3; H. Tr. 50-54).

The trial commenced on September 20, 2000 before Justice Tonetti and a jury. The principal witness for the State was Theresa Jack. In addition the State called Ms. Jack's niece, Tenaja Regina Middleton, and various police witnesses.

Ms. Jack testified that she had been romantically involved

with Memminger off and on from 1992 until 1997, during which time
they had a son, named Yusef. In 1997 she called the police to her
apartment and subsequently obtained an order of protection against
Memminger. (Tr. 269-70, 274, 301-02, 309-10, 389).

Ms. Jack later began a relationship with Mr. Trail, formerly
the boyfriend of her niece, Ms. Middleton. (Tr. 311-24, 447-49,
457). Ms. Jack reported that on March 21, 1998 the petitioner had
entered her apartment through a bedroom window, and on finding her
and Mr. Trail in bed he had threatened to kill Trail and torn up
Ms. Jack's order of protection. Trail promptly left the apartment.
(Tr. 270-72, 275, 392-93, 396, 411). After both men departed, Ms.
Jack called the police, and six days later Det. Kenneth Velasquez
arrested Memminger. (Tr. 137, 154-55, 275, 396-97, 417-18).
Petitioner was subsequently released, however, and on March 27,
1998 he again entered Ms. Jack's bedroom by the fire escape and a
window, and again threatened Mr. Trail, who was once more with Ms.
Jack. In the wake of this threat, both men left the apartment. (Tr.
275-76, 411-14).

On April 3 Memminger again appeared in Ms. Jack's bedroom,
having entered Ms. Jack's apartment through a window in their son's
bedroom. Finding Mr. Trail once again present, he stabbed him twice

4

with a knife, killing him in the process. (Tr. 277-80, 336-38, 370-71, 373-74, 376-77, 412). He then turned on Ms. Jack, wounding her on her left palm and right shoulder. (Tr. 278-80, 385-88, 444-45). Under threat of being killed she followed Memminger's instructions, helping him to place the body in some plastic garbage bags, as Memminger attempted to clean up the blood in the room and cut off bloody pieces of the mattress. (Tr. 280, 282-85, 326-30, 354, 360, 424, 429).

Memminger then remained for several days in the apartment with Ms. Jack and their son, who was living there, and with the body of Mr. Trail. Eventually, he and Ms. Jack moved the body out of the apartment and onto the street. Unable to load it in a dumpster, petitioner left it on the sidewalk and covered it with garbage. (Tr. 284, 331-36, 341, 343-44, 385, 423). He also disposed of bloody portions of the mattress and bloody clothes and towels near the subway station. Memminger then traveled with Ms. Jack and their son to Queens to obtain money from his father. Memminger, Ms. Jack and their son later went to Memminger's mother's apartment in the Bronx. (Tr. 283, 285-86, 339, 347-48, 351, 352A, 360).

On April 9 two sanitation workers found Trail's body. (Tr. 120-21, 124-26, 217-23). A medical examination disclosed two deep

stab wounds, one to the chest and one to the abdomen, both of which the examiner deemed to have been fatal. (Tr. 252-57). The body was then identified by fingerprints as Trail. (Tr. 138, 171). Det. Velasquez subsequently contacted Trail's sister, who identified Ms. Middleton as Trail's girlfriend. (Tr. 139-40). On questioning, Ms. Middleton reported that Trail had become Ms. Jack's girlfriend (Tr. 140), as did the sister of Ms. Jack. (Tr. 140-42). Det. Velasquez then went to Ms. Jack's apartment, found it unoccupied, and left his card. (Tr. 142-43, 168).

Learning from her sister that the police were looking for her, on April 12 Ms. Jack called the police and told them to "come pick me up." When the police picked her up, she told them what had occurred. (Tr. 286-87, 352-56, 360-63, 365-67, 376, 379; see also Tr. 144-45). At Ms. Jack's apartment the police found blood on a wall and evidence of Memminger's efforts to clean the bedroom and excise the bloody portions of the mattress. (Tr. 156-57,164,178-79, 187-89, 192-93, 196, 203).

Memminger was arrested the same day. (Tr. 286-87). Following his arrest, he made a statement in which he admitted killing Trail, but claimed that he had acted in self-defense. According to Memminger, he had been in bed with Ms. Jack when Trail entered the

6

bedroom and attacked him with a knife, which he had then wrestled away from Trail and used to protect himself in the struggle. He further claimed that Ms. Jack had refused to call for medical help for Trail and had herself instructed Memminger to clean the room and place Trail's body in a bag. (Tr. 152-54).

Ms. Jack testified that after Memminger's arrest he had told her to change her story to conform to his version of events. When she refused, he threatened to blame her for the murder. (Tr. 287-89, 432-35). Ms. Middleton also testified to a post-arrest conversation with Memminger, in which he had offered a different account from his story to the police. Memminger claimed to Middleton that he had entered the apartment with a key and that Trail, who was inside, had attacked him, forcing him to pull out a knife and stab Trail. (Tr. 451-55).

The defense called only one witness, Melvin Jack, Ms. Jack's foster brother. He testified that Memminger had been staying with him before the murder, and that on April 1 Ms. Jack had called Memminger to ask him to bring her some money. He further testified that Memminger had then told him on April 2 that he was going to see Ms. Jack to bring her "money for the child." (Tr. 487-88).

7

The court submitted four counts to the jury -- first- and second-degree murder, first-degree manslaughter and first-degree burglary. (Tr. 562). On September 28, 2000 the jury convicted Memminger of second-degree murder. (Tr. 607-08).

The trial judge sentenced petitioner on March 1, 2001 to a term of twenty-five years to life. (S.Tr. 18).

Memminger pursued a direct appeal to the Appellate Division, First Department. On appeal he argued that the trial judge's jury instructions had improperly described reasonable doubt by adverting to the notion that a reasonable doubt is one that the other jurors, during deliberations, had a "right" to hear, assertedly a violation of the rule embodied in People v. Antommarchi, 80 N.Y.2d 247, 251-52, 590 N.Y.S.2d 33, 35-36 (1992). (See Baumgartner Aff. Ex. 1 at 25-31). He also criticized other portions of the charge as failing to give proper treatment to his justification defense and shifting the burden of proof when describing the criminal-intent requirement. (Id. Ex. 1 at 31-38). Apart from his attacks on the instructions, he claimed that the court had violated his right to judicial supervision of the jury trial when it let a court officer ask a juror whether he had seen Memminger in handcuffs. (Id. Ex. 1 at 38-41). Finally, petitioner complained that the prosecutor had

8

denied him a fair trial by not producing police photographs of Ms.
Jack's injuries until the defense attorney had completed his cross-
examination of Ms. Jack. (Id. Ex. 1 at 41-46).[1]


The Appellate Division affirmed the conviction on November 25,
2003. People v. Memminger, 1 A.D.3d 292, 768 N.Y.S.2d 6 (1st Dep't
2003). The panel noted that the trial judge should have used the
standard charge on reasonable doubt but concluded that the charge,
read as a whole, did not misstate the burden of proof or violate
the rule of Antommarchi. As for Memminger's attack on the
instructions regarding the justification defense and criminal
intent, the court found these objections to be unpreserved, and it
declined to review them in the interest of justice. It also
observed, in the alternative, that if it had addressed the merits,
it would have upheld the challenged aspects of the charge as
"sufficiently balanced". Id. at 292, 768 N.Y.S.2d at 7.


On the question of delegation of judicial responsibilities,
the court said that the record did not support Memminger's
contention that the trial judge had "improperly delegated judicial

---

[1] In fact, the trial transcript reflects that the disclosure
about the photographs was made before defense counsel had
completed his cross-examination of the witness. (See Tr. 398-
437).

authority." It noted that the record in its current state indicated that the court officer had questioned the juror in the presence of the judge and counsel, and in any event the inquiry was ministerial in nature. Id. at 292-93, 768 N.Y.S.2d at 7.

Finally, the court found that the trial judge had acted within his discretion in allowing the prosecution to offer testimony about the photographs of Ms. Jack's injuries and in refusing to grant a mistrial. According to the court, although the prosecutor's disclosure of the photos was untimely under state discovery rules, that error had resulted only in some cross-examination by the defense that was "superfluous" but not prejudicial, especially in light of an explanatory jury instruction. Id. at 293, 768 N.Y.S.2d at 7-8.

Petitioner next sought leave to appeal to the New York Court of Appeals. In doing so, he raised only two issues -- the asserted violation of the Antommarchi rule in the jury instruction on reasonable doubt and the asserted improper delegation of judicial authority. (Baumgartner Aff. Exs. 5, 7). The Court of Appeals denied the application on February 13, 2004. People v. Memminger, 1 N.Y.3d 631, 777 N.Y.S.2d 29 (2004).

10

Having been rebuffed by the state courts, Memminger finally turned to this court, filing a petition that is dated November 22, 2004. In that petition he asserts all of the claims that he pressed before the Appellate Division.


ANALYSIS


A. The Standard for Habeas Review


The stringency of federal habeas review turns on whether the state courts have passed on the merits of the petitioner's claim, that is, whether the decision of the highest state court to consider the claim is "based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (discussing 28 U.S.C. § 2254(d)). If the state court has addressed the merits, the petitioner may obtain relief only if the state court's ruling

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see, e.g., Bell v. Cone, 535 U.S. 685, 693-94

11

(2002); <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000); <u>Howard v. Walker</u>, 406 F.3d 114, 121-22 (2d Cir. 2005); <u>Brown v. Artuz</u>, 283 F.3d 492, 497-98 (2d Cir. 2002).

Clearly established federal law "refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." <u>Howard</u>, 406 F.3d at 122 (quoting <u>Kennaugh v. Miller</u>, 289 F.3d 36, 42 (2d Cir. 2002)). "[A] decision is 'contrary to' clearly established federal law 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" <u>Id.</u> (quoting <u>Williams</u>, 529 U.S. at 413).

What constitutes an "unreasonable application" of settled law is a somewhat murkier proposition. "A federal court may not grant habeas simply because, in its independent judgment, the 'relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" <u>Id.</u> (quoting <u>Fuller v. Gorczyk</u>, 273 F.3d 212, 219 (2d Cir. 2001) (quoting <u>Williams</u>, 529 U.S. at 411)). The Supreme Court observed in <u>Williams</u> that "unreasonable" did not mean "incorrect" or "erroneous," noting that the writ could issue

12

under the "unreasonable application" provision only "if the state court identifies the correct governing legal principle from this Court's decisions [and] unreasonably applies that principle to the facts of the prisoner's case." 529 U.S. at 410-13. As implied by this language, "[s]ome increment of incorrectness beyond error is required . . . [H]owever, . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" Monroe v. Kuhlman, 433 F.3d 236, 246 (2d Cir. 2006) (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).

As for the state courts' factual findings, under the habeas statute "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); McKinney v. Artuz, 326 F.3d 87, 101 (2d Cir. 2003); see generally Rice v. Collins, 546 U.S. 333, 338-39 (2006).

The Jury-Charge Claims

Petitioner, in adopting his state appellate brief in this proceeding, launches three attacks on the trial court's jury

13

charge. First, he complains that the judge, in discussing reasonable doubt, said the following:

> A reasonable doubt has been referred [to] by our courts as the kind of doubt for which a juror can give a reason if called upon to do so in the jury room, not to us[.] [W]hen you come back here this afternoon with a verdict or whenever it may be, no one will be asking you what's it based on, what's your reason for it?

> But amongst yourselves in the jury room if a juror should say well, I have a reasonable doubt, the other jurors would have the right to turn to you and say, okay. Share it with us. What's it based on? Perhaps we will agree with you.

> Or a juror who says I don't have a reasonable doubt, vice versa. That's the give-and-take that goes on in the jury room amongst yourselves, those of you who have had previous experience know what I'm talking about where each person tries to render his or her views in an effort to arrive at a fair and just verdict.

(Tr. 574-75). According to petitioner, this instruction had the improper effect of limiting reasonable doubt to reasons that the individual juror was able to articulate to his or her fellow jurors, a definition that was said to violate the standards recognized by the New York Court of Appeals in its <u>Antommarchi</u> decision.

    As separate matters, the petitioner argued that the jury charge was deficient in two other respects. First, he said, the judge had ignored his justification defense through most of the

charge, and then, when discussing it, had given it short shrift. (Tr. 582-87, 588-89). Second, he complained that the judge, in addressing criminal intent, had in effect charged the jury that a person should be viewed as intending the natural consequences of his acts, thus violating governing Supreme Court law requiring that the prosecution prove all elements of the crime beyond a reasonable doubt.

We first address the latter two aspects of petitioner's jury-charge claim, both of which are procedurally barred from habeas review. As for his complaint about the reference to jurors asking each other for their reasoning, we conclude that the claim is meritless.

As noted, the Appellate Division explicitly held that the jury-charge claim, insofar as it rested on criticisms of the handling of the justification defense and the explanation of criminal intent, was unpreserved, and the court further declined to consider these issues in the interest of justice. This ruling triggers procedural-default analysis.

If the highest state court to address a claim disposes of it on a "state law ground that is independent of the federal question

and adequate to support the judgment," we may not review it unless petitioner demonstrates both cause for his default and prejudice or else establishes that a failure to address the claim would constitute a fundamental miscarriage of justice. See, e.g., Coleman v. Thompson, 501 U.S. 722, 729, 750 (1991); see also Jimenez v. Walker, 458 F.3d 130, 136 (2d Cir. 2006) (quoting Harris v. Reed, 489 U.S. 255, 260 (1989)). Moreover, even if, as here, the appellate court rejects the claim as unpreserved and then, in the alternative, notes that if it had reviewed the merits it would have rejected the claim, the ruling is deemed, for this purpose, to have rested on the procedural ground. See, e.g., Harris, 489 U.S. at 264 n.10; Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005); Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996).

To be independent, a state law holding must rest on state law that is not "interwoven with federal law." Jimenez, 458 F.3d at 137 (quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)). Since it can be "'difficult to determine if the state law discussion is truly an independent basis for decision or merely a passing reference,' . . . reliance on state law must be 'clear from the face of the opinion.'" Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000) (quoting Coleman, 501 U.S. at 735). When determining whether we may entertain a claim, we "apply a

16

presumption against finding a state procedural bar and 'ask not what we think the state court actually might have intended but whether the state court plainly stated its intention.'" <u>Galarza v. Keane</u>, 252 F.3d 630, 637 (2d Cir. 2001) (quoting <u>Jones v. Stinson</u>, 229 F.3d 112, 118 (2d Cir. 2000)). As for the requirement of adequacy, the state procedural rule must be "'firmly established and regularly followed by the state in question' in the specific circumstances presented in the instant case." <u>Murden v. Artuz</u>, 497 F.3d 178, 192 (2d Cir. 2007) (quoting <u>Monroe v. Kuhlman</u>, 433 F.3d 236, 241 (2d Cir. 2006)); <u>see James v. Kentucky</u>, 466 U.S. 341, 348-49 (1984); <u>Cotto v. Herbert</u>, 331 F.3d 217, 239 (2d Cir. 2003) (quoting <u>Garcia v. Lewis</u>, 188 F.3d 71, 77 (2d Cir. 1999)).

Here, the explicit finding of the Appellate Division that the specified portions of Memminger's jury-charge claim were unpreserved represents an independent and adequate state-law ground on which the state court relied in rejecting the claim. The appellate court's ruling was premised on the failure of defense counsel to object at trial to portions of the jury charge targeted on appeal. That ruling relies squarely and solely on the so-called "contemporaneous objection" rule, embodied at N.Y. Crim. Proc. § 470.05, and is purely a function of state law. <u>See</u>, <u>e.g.</u>, <u>Aparicio v. Artuz</u>, 269 F.3d 78, 93 (2d Cir. 2001); <u>Reese v. Greiner</u>, 2003 WL

21459577, at *5 (S.D.N.Y. June 23, 2003).

There is also no question as to the adequacy of this rule. The
New York courts consistently apply it to claims based on errors in
the jury instructions, and hence decline to address the merits of
such grounds if the defendant has not voiced a timely objection at
trial. <u>See</u>, <u>e.g.</u>, <u>People v. Slacks</u>, 90 N.Y.2d 850, 851, 660
N.Y.S.2d 863, 864 (1997); <u>People v. Rodriguez</u>, 62 A.D.3d 728, 728,
880 N.Y.S.2d 89, 89 (2d Dep't 2009); <u>People v. Crawford</u>, 61 A.D.3d
773, 774, 877 N.Y.S.2d 168, 170 (2d Dep't 2009).

Since the Appellate Division rejected the pertinent portions
of Memminger's claim on an independent and adequate state-law
ground, we may not address his arguments on the merits unless he
satisfies one of two recognized exceptions. He must either show
cause for the default and prejudice resulting from the alleged
violation of federal law, or else demonstrate that a "fundamental
miscarriage of justice" would result from a failure to consider the
claim. <u>Coleman</u>, 501 U.S. at 750; <u>see also</u> <u>Bousley v. United States</u>,
523 U.S. 614, 622 (1998); <u>Jones v. Vacco</u>, 126 F.3d 408, 415 (2d
Cir. 1997); <u>Washington v. James</u>, 996 F.2d 1442, 1446-47 (2d Cir.
1993). For purposes of habeas review, "[t]he cause component of the
cause-and-prejudice analysis requires more than a but-for causal

18

relationship between the cause and the default." <u>Lee v. Kemna</u>, 534
U.S. 362, 405 (2002). "[T]he existence of cause for a procedural
default must ordinarily turn on whether the prisoner can show that
some objective factor external to the defense impeded counsel's
efforts to comply with the state's procedural rule." <u>Strickler v.
Greene</u>, 527 U.S. 263, 283 n.24 (1999) (quoting <u>Murray v. Carrier</u>,
477 U.S. 478, 488 (1986)). As for the "fundamental miscarriage of
justice" test, that "rare" exception to procedural bar is reserved
for "the extraordinary case" in which the petitioner can
demonstrate that he was actually innocent and that the claimed
error led to his conviction. <u>Schlup v. Delo</u>, 513 U.S. 298, 321
(1995) (quoting <u>Murray</u>, 477 U.S. at 496); <u>see</u> <u>also</u> <u>Doe v. Menefee</u>,
391 F.3d 147, 160-61 (2d Cir. 2004). Moreover, the petitioner is
expected to establish actual innocence based on new evidence rather
than what was presented at trial. <u>See</u>, <u>e.g.</u>, <u>Schlup</u>, 513 U.S. at
327.

      Petitioner fails to satisfy either test. He does not attempt
to explain why his attorney failed to object to the portions of the
charge concerning the justification defense and criminal intent,
and there is no reason to believe that defense counsel was

prevented from doing so.[2] In short, Memminger does not demonstrate cause.

He also cannot satisfy the demanding standard to demonstrate that failure to address these aspects of his jury-charge claim would constitute a fundamental miscarriage of justice. He cannot show that he is in fact innocent; indeed, the evidence at trial was strongly indicative of guilt, and he proffers no new evidence. Ultimately, there was no question that he stabbed Trail, and his self-defense theory, unsupported by any testimony and found only in his statement to the police, was thoroughly unconvincing.

In sum, Memminger's challenges to the justification instruction and the discussion of criminal intent are procedurally barred from habeas review. As for his attack on the discussion of reasonable doubt -- and more specifically his criticism of the judge's reference to the right of jurors to ask each other for

_____

[2] Although a petitioner may satisfy the cause requirement by demonstrating that his attorney's default denied him constitutionally adequate representation, Restrepo v. Kelly, 178 F.3d 634, 640 (2d Cir. 1999), he cannot invoke this ground for cause unless he has first asserted an equivalent Sixth Amendment claim in state court and exhausted his state-court remedies with respect to it. See, e.g., Edwards v. Carpenter, 529 U.S. 446, 451 (2000). Memminger never asserted such a claim in state court based on his trial attorney's handling of the prosecution's summation, and hence he cannot raise it now to show cause.

their reasons for finding a reasonable doubt -- this claim provides no basis for habeas relief.

An error in jury instructions does not generally rise to the level of a constitutional violation. See, e.g., Gilmore v. Taylor, 508 U.S. 333, 341 (1993); Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). To obtain relief, the petitioner must demonstrate not only that the instruction was erroneous, "but also that the error violated a right guaranteed to him by federal law." Sams v. Walker, 18 F.3d 167, 171 (2d Cir. 1994) (internal quotation marks omitted) (quoting Casillas v. Scully, 769 F.2d 60, 63 (2d Cir. 1985)); see, e.g., Cupp v. Naughten, 414 U.S. 141, 146 (1973). The error may involve a mistake in describing the elements of the crime as defined by state law, if that failing was of such significance as to deprive the defendant of a fair trial, see generally Sams, 18 F.3d at 171-72 (analyzing charge based on elements defined by state law), or it may involve an error that is, on its face, of constitutional significance, such as misstating the burden of proof, see, e.g., Sandstrom v. Montana, 442 U.S. 510, 520-21 (1979), or the meaning of "reasonable doubt." See, e.g., Sullivan v. Louisiana, 508 U.S. 275, 278 (1993). In either event, however, the petitioner must demonstrate that the erroneous instruction, viewed in the context of the entire charge and the entire trial,

21

denied him a fundamentally fair trial. See, e.g., Cupp, 414 U.S. at 146-47; Brown v. Greene, __ F.3d __, 2009 WL 2445401, *3 (2d Cir. Aug. 13, 2009).

It necessarily follows that the charge is to be read as an integrated whole. See, e.g., Cupp, 414 U.S. at 146-47; United States v. Zvi, 168 F.3d 49, 58 (2d Cir. 1999); Vargas v. Keane, 86 F.3d 1273, 1277 (2d Cir. 1996). Thus, even if a single instruction in a charge, by itself, is erroneous, the conviction is not to be set aside on that basis unless it can be said that "it is 'reasonably likely' that the jury applied the erroneous standard described or implied by those few words." Chalmers v. Mitchell, 73 F.3d 1262, 1267 (2d Cir. 1996).

Even if the habeas court concludes that the trial judge committed an error of significant magnitude, the petitioner bears the burden of demonstrating that the error "infected the entire trial." Cupp, 414 U.S. at 147; Davis v. Strack, 270 F.3d 111, 123, 131-32 (2d Cir. 2001). Otherwise stated, the question is "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Id. at 123 (quoting Cupp, 414 U.S. at 147); accord Jackson v. Edwards, 404 F.3d 612, 624-25 (2d Cir. 2005) (noting that courts must examine

22

whether denial of the requested charge was "'sufficiently harmful to make the conviction unfair'") (quoting Davis, 270 F.3d at 124).

The asserted error targeted by Memminger is the arguable suggestion by the trial judge that if a juror harbored a reasonable doubt, the other jurors had "a right" to ask, and, by implication, to hear, the doubting juror's reasons for his doubts. Apart from the conclusion in Antommarchi that an instruction telling jurors that they must be able to articulate their reasons for harboring a reasonable doubt is inappropriate, the Second Circuit has cast doubt on it as well. See, e.g., Vargas, 86 F.3d at 1277-79; Chalmers, 73 F.3d at 1268-69. See also United States v. Klock, 210 F.2d 217, 224 (2d Cir. 1954); United States v. Farina, 184 F.2d 18, 21 (2d Cir. 1950). As observed by these courts, the instruction "might intimidate a juror" or cause jurors to disregard proper doubts, and might lead some of them to expect the defendant to provide the reasoning, in violation of the burden of proof that rests on the prosecutor. E.g., Vargas, 86 F.3d at 1278; United States v. Davis, 328 F.2d 864, 867-68 (2d Cir. 1964). Nonetheless, in none of its decisions did the Second Circuit hold that the use of language stating, in substance, that "jurors should be ready to give a reason for their doubts" was reversible error, much less a denial of due process. See, e.g., Vargas, 86 F.3d at 1277-78

23

(charge read as a whole did not violate due process); Chalmers, 73 F.3d at 1268 (court's reminder that State had the burden of proof satisfied legal requirements); Davis, 328 F.2d at 867-68 (instruction, while "not approved" and "perhaps unwise" was "not erroneous"); see also Larrea v. Bennett, 368 F.3d 179, 183-84 (2d Cir. 2004).

The jury charge in this case plainly passes muster since the court mentioned on several occasions that the State bore the burden of proving petitioner's guilt beyond a reasonable doubt and that to do so it must establish all of the elements of the crime. (Tr. 572-76, 578-82, 586-88, 591). It also bears emphasis that under the restrictive standard of review imposed by section 2254(d), the ruling of the Appellate Division cannot provide a basis for habeas relief unless its decision was contrary to, or an unreasonable application of, Supreme Court law. Petitioner fails to cite, and we are unaware of, any Supreme Court precedent that would dictate, or even strongly suggest, a contrary result in this case. As noted, the caselaw casting even some doubt on the wisdom of an Antommarchi type of instruction comes from the New York Court of Appeals and from the Second Circuit. As the Circuit noted in rejecting a related claim under the Sixth Amendment: "[I]n addressing a state habeas petition after AEDPA, we judge whether the state courts

24

reasonably interpreted Supreme Court precedent, not whether they reasonably interpreted our precedent." <u>Larrea</u>, 368 F.3d at 184 n.3. In any event, as we have noted, to the extent that Second Circuit decisions may reflect that court's understanding of Supreme Court precedent, on this issue it offers no comfort to petitioner. <u>See also</u> <u>Fluellen v. Walker</u>, 41 Fed. Appx. 497, 501-02 (2d Cir. 2002).

Finally, we note that the instruction actually given, when read in context, did not actually say that jurors who had a reasonable doubt must be able to explain their reasons. Rather, the judge indicated, somewhat inartfully, that all jurors, whether they favored conviction or acquittal, are expected to discuss their views with their fellow jurors. Such an instruction is common and not at all inappropriate. Morever, in this case petitioner does not, and cannot, demonstrate that this type of charge was such an egregious error that -- by itself and notwithstanding the overwhelming weight of evidence -- it denied him a fundamentally fair trial.

<u>The Judicial-Delegation Claim</u>

Petitioner's next claims that he was denied his right to a

25

proper jury trial because of a brief interchange between a court officer and a juror in which the court officer ascertained that the juror had not seen petitioner in handcuffs. Memminger claims that allowing the officer to ask this question of the juror represented an impermissible delegation of judicial authority by the trial judge and thus denied him a jury trial properly supervised by a judge.

This claim is meritless. The pertinent interchange was as follows:

> DEFENSE: I think, judge, one of the jurors just contacted one of the court officers and it may be that we would have to make some enquiry because the juror actually came into the courtroom when Mr. Memminger was being, I don't know if he was handcuffed or not, but he was being escorted into the courtroom by the officers.
>
> THE COURT: Billy?
>
> THE SERGEANT: He says he doesn't know anything.
>
> THE COURT: The juror says he doesn't know anything. We're set, but he should know something. I'm told by the sergeant he just saw him sitting there. All right. Bring the jurors down please.

(Tr. 442-43). When presented with the improper-delegation argument on appeal, the First Department concluded:

> The record fails to support defendant's claim that the court improperly delegated judicial authority to a court

> officer. . . . The existing record, even if viewed most favorably to defendant, indicates that the communication between a court officer and a juror occurred in the presence of the court, the attorneys and defendant, and constituted an inquiry that was ministerial in any event.

Memminger, 1 A.D.3d at 292-93, 768 N.Y.S.2d at 7.


The right to a jury trial embraces the requirement that the trial be supervised in all pertinent phases by a judge and that all judicial functions be performed by that judge. See, e.g., United States v. Grant, 52 F.3d 448, 450 (2d Cir. 1995)(citing Capital Traction Co. v. Hof, 174 U.S. 1, 13 (1899)). Accord People v. Ahmed, 66 N.Y.2d 307,311-12, 496 N.Y.S.2d 984, 986-87 (1985). See generally N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 79 (1982)(explaining significance of keeping ultimate decision-making authority in hands of judge). As characterized by the Second Circuit, the judge must be present for "substantive conduct of functional portions of the trial", but not for "performance of mechanical repetitions." Grant, 52 F.3d at 450; see also United States v. Peterson, 248 F.3d 79, 84-85 (2d Cir. 2001).


As found by the Appellate Division, the judge was present for the inquiry by the court officer to the juror. That finding, which appears justified by the transcript passage, is binding on us, and

demonstrates that the requirement of judicial presence -- if it even applied in these circumstances -- was satisfied. Moreover, there is no Supreme Court precedent that would dictate or even suggest that such a routine -- indeed, ministerial -- question of a juror must necessarily be posed by the judge rather than by a court officer, see, e.g., Christian v. Artus, 2006 WL 2463432, *8-10 (S.D.N.Y. Aug. 23, 2006)(out of judge's presence, court officer asked potential jurors about scheduling conflicts during voir dire; no violation found), and in any event the judge was available to pursue any inquiries of the juror if he in fact had seen the defendant in restraints. Accord id. at *9.

In short, the decision of the Appellate Division on this issue cannot be viewed as contrary to, or an unreasonable application of, Supreme Court law, and petitioner's claim offers no basis for habeas relief.

The Photographic-Evidence Claim

Petitioner next focuses on a ruling of the trial court that allowed a police detective to be recalled to testify that he had observed and photographed a cut on Ms. Jack. Memminger complains that the failure of the prosecutor to disclose these photos until

28

defense counsel was in the midst of cross-examination violated his rights of confrontation, effective assistance of counsel and due process, and that the trial judge should have granted his request for a mistrial.

The sequence of events, as reflected in the transcript and found by the trial judge, started with Ms. Jack's testimony, both on direct examination and on cross-examination, that she had been injured by Memminger and that the police had photographed her injuries. (Tr. 278-79, 385-88). At a lunch break during the cross-examination of Ms. Jack, the prosecutor discovered two photographs in a police file reflecting an apparent knife injury that Ms. Jack had suffered, presumably during her struggle with Memminger. The prosecutor did not recall seeing the photos before (Tr. 461) and told defense counsel about his discovery before the trial resumed that afternoon. (Tr. 398-99, 402, 404-06, 438). Although he insisted that he originally had no intention to use these previously unknown photos (Tr. 402, 407-08), in view of the prior cross-examination of Ms. Jack, during which defense counsel had questioned her claim that Memminger had attacked her (Tr. 385-89), the prosecutor now sought to recall Det. Velasquez to testify about the photographs. (Tr. 408). Defense counsel sought to preclude any reference to the photos, claiming serious prejudice. (Tr. 407).

The trial judge indicated his belief that the prosecution's failure to turn over the photos had violated state rules on discovery, and found it "disturbing" that defense counsel had relied on the absence of such photos when questioning Ms. Jack.[3] Nonetheless, he concluded that it would be "more disturbing" to exclude reference to the photos and, in effect, allow the defense "to mislead the jury into believing the photographs don't exist or these injuries weren't there." (Tr. 408-10). Defense counsel then moved for a mistrial (Tr. 410), which the judge denied, finding that the photos were collateral to the question of whether Memminger had murdered Mr. Trail, and that the existence and extent of her injuries may be relevant to the justification defense and could help the defense. (Tr. 437-39, 461-62).

Given these circumstances, the judge allowed the State to recall the detective to testify that he had observed a cut on Ms. Jack's body and had photographed it. (Tr. 444-46). The photos themselves, however, were never received in evidence.

The court then gave the jury a curative charge about the

---

[3] The judge also questioned the delay of defense counsel in raising the issue, since Ms. Jack had referred to these photographs in her earlier testimony. (Tr. 403-04).

issue. He explained, in substance, that neither lawyer had been aware of the photographs until a day or two before, and told the jurors that since there had been an issue about Ms. Jack's claimed injuries, the photographs were at least relevant. He went on to say that since they had just been discovered, defense counsel had not been aware of them at the time of his cross-examination and that "he didn't want to look like he was trying to get something over on you, he was just unaware that there was such a thing as those pictures." (Tr. 446-47).

Petitioner subsequently renewed his mistrial request, and the court denied it. (Tr. 459-62). As noted, the Appellate Division affirmed these rulings, referring to the apparent inadvertence of the non-disclosure and the absence of prejudice to Memminger in view of the trial judge's instruction to the jury on the matter. Memminger, 1 A.D.3d at 293, 768 N.Y.S.2d at 7-8.

These circumstances do not reflect a violation of any of Memminger's constitutional rights. He cites his right to confrontation, but his attorney was permitted to cross-examine Ms. Jack as well as the police detective. Moreover, although the photos were not disclosed to him until after he had done some of his cross-examination of Ms. Jack, if there were any other question

that he wished to pose to her he was presumably free to do so during the remainder of his examination of her. He was also free to cross-examine the detective when the officer was re-called. The circumstances, in short, do not reflect a denial of the ability to confront the witnesses, but rather a mis-step by the lawyer in pressing an issue that he might not have done had he been aware of the photos when he originally questioned Ms. Jack. That is not in itself a violation of a right of confrontation, and any arguable prejudice -- which had to have been minimal in view of the collateral nature of the issue of Ms. Jack's injuries -- was presumptively cured by the court's instruction, explaining that defense counsel was not aware of the photos at the time of his interrogation of Ms. Jack. See generally Pennsylvania v. Ritchie, 480 U.S. 39, 53 (1987).

Petitioner's invocation of his right to the effective assistance of counsel fares no better. To sustain such a claim, he must demonstrate that his attorney's performance was "so defective that 'counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment' and that counsel's errors were 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Brown v. Artuz, 124 F.3d 73, 79 (2d Cir. 1997) (quoting Strickland v. Washington, 466 U.S. 668, 687

32

(1984)). As summarized in <u>Brown</u>:

> To satisfy the first, or "performance," prong, the defendant must show that counsel's performance was "outside the wide range of professionally competent assistance," and to satisfy the second, or "prejudice," prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

<u>Id.</u> at 79-80 (quoting <u>Strickland</u>, 466 U.S. at 690, 694); <u>accord</u>, <u>e.g.</u>, <u>Brown</u>, ___ F.3d ___, 2009 WL 2445401, at *2; <u>Henry v. Poole</u>, 409 F.3d 48, 62-64 (2d Cir. 2005).


It bears emphasis that the <u>Strickland</u> standard is quite deferential, and that a claim of constitutional dimension does not arise unless a lawyer's error is so egregious as to amount to a failure to provide minimal professional representation. Thus, a habeas court weighing an ineffective-assistance claim "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," and must "determine whether, in light of all the circumstances, [counsel's] acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690; <u>accord</u>, <u>e.g.</u>, <u>Loliscio v. Goord</u>, 263 F.3d 178, 192 (2d Cir. 2001). In making this determination, "the court should recognize that

counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Strickland</u>, 466 U.S. at 690.

Petitioner fails in any way to make such a twin showing. His attorney performed with competence in the face of an overwhelming showing of his client's guilt, and his minor stumble in cross-examining Ms. Jack about her injuries was plainly inconsequential. Moreover, as we have noted, petitioner cannot demonstrate any meaningful prejudice from the State's error, in view of the fairly marginal relevance of the issue, the irrefutable proof that Ms. Jack did indeed suffer an injury from her encounter with Memminger, and the court's instruction to the jury explaining the circumstances of the reference to the photographs.

Petitioner's alternative theory -- that the court's rulings on this point denied him due process -- is equally misguided. At base, the prosecutor's performance reflected an apparent violation of State rules governing pre-trial discovery, a violation that in itself is not reviewable by the habeas court. <u>See</u> <u>Gray v. Netherland</u>, 518 U.S. 152, 168 (1996)(no constitutional right to notice of inculpatory evidence). Ultimately, Memminger is challenging a set of evidentiary rulings by the trial court, and

34

such decisions are generally not of constitutional dimension and hence also not ordinarily reviewable in a habeas proceeding. <u>See</u>, <u>e.g.</u>, <u>Estelle</u>, 502 U.S. at 67-68, 71-72.

Indeed, the courts have long recognized that, absent a direct violation of a specific constitutional right, such rulings will not justify habeas relief unless they were both erroneous under state or federal law and "so pervasive as to have denied [petitioner] a fundamentally fair trial." <u>Collins v. Scully</u>, 755 F.2d 16, 18 (2d Cir. 1985). For reasons discussed, that is plainly not the case here.[4]

Finally, we note that the various constitutional theories floated by Memminger fail in any event to provide a basis for habeas relief because the ruling of the Appellate Division affirming the trial judge's handling of this matter plainly did not contradict or unreasonably apply settled law as recognized by the Supreme Court.

---

[4] To the extent that petitioner might be heard to articulate a slightly different theory -- that the State's failure to provide the photos violated his rights under <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), and its progeny -- that claim would fail both because he never asserted it in state court and because the photographs (reflecting an injury suffered by Ms. Jack) were not exculpatory and arguably not material. <u>See</u>, <u>e.g.</u>, <u>United States v. Bagley</u>, 473 U.S. 667, 674 (1985); <u>Brady</u>, 373 U.S. at 87-88.

CONCLUSION

For the reasons stated, we recommend that the writ be denied and the petition dismissed. As Memminger has failed to make a substantial showing of the denial of a constitutional right, we also recommend that a certificate of appealability not be issued. 28 U.S.C. § 2253(c).

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable William H. Pauley, Room 2210, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e); Thomas v. Arn, 470 U.S. 140, 150-52 (1985); DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)).

Dated: New York, New York
       September 9, 2009


                                    _____
                                    MICHAEL H. DOLINGER
                                    UNITED STATES MAGISTRATE JUDGE




Copies of the foregoing Report and Recommendation have been mailed
today to:

Mr. James Memminger
# 01-A-2569
Sing Sing Correctional Facility
354 Hunter Street 7
Ossining, New York 10562


Susan E. Baumgartner, Esq.
Assistant District Attorney
 for Bronx County
198 East 161st Street
Bronx, New York 10451

37